UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FALENCIA A. FAIR, | ) | Case No. 1:19-cv-01181-SO |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | Magistrate Judge William H. Baughman, Jr. |
| v. | ) | |
| | ) | |
| THE OHIO BELL TELEPHONE COMPANY, | ) | **AMENDED COMPLAINT** |
| | ) | |
| Defendant. | ) | **(Jury Demand Endorsed Herein)** |

Plaintiff, Falencia A. Fair, by and through counsel, for her Amended Complaint against Defendant, The Ohio Bell Telephone Company (named "AT&T Teleholdings, Inc." in Plaintiff's original Complaint), states and alleges the following:

## NATURE OF ACTION

1.      This action arises under the laws of the state of Ohio, including the Ohio Civil Rights Act as amended, Ohio R.C. § 4112.01, *et seq*.  No federal claims are asserted herein.

## PARTIES

2.      Plaintiff, a 51-year-old African American who suffers a disability, is a resident of Cuyahoga County, Ohio, and was employed with Defendant in Cuyahoga County from approximately October 10, 1994 to February 18, 2016.

3.      Defendant, The Ohio Bell Telephone Company, d/b/a AT&T Ohio ("AT&T"), a wholly-owned subsidiary of AT&T Teleholdings, Inc., is a domestic corporation with its principle place of business in Cuyahoga County, Ohio, and is and was, at all times relevant hereto, an employer within the meaning of Ohio R.C. § 4112.

**JURISDICTIONAL STATEMENT**

4.      Although this Court had original jurisdiction, pursuant to 28 U.S.C. § 1331, over the federal claims asserted Plaintiff's original (*pro se*) Complaint, this Amended Complaint only asserts claims under the laws of the State of Ohio (thereby precluding federal question jurisdiction), and because Plaintiff and AT&T are both citizens of Cuyahoga County, Ohio (thereby precluding diversity jurisdiction), jurisdiction now properly lies in the Cuyahoga County Court of Common Pleas—the Ohio state court from which this action was removed.  "If an amendment eliminates all the federal claims, remand becomes a discretionary decision for the district court under 28 U.S .C. § 1367(c)."  *Eastman v. Marine Mechanical Corp.,* 438 F.3d 544, 551 (6th Cir.2006).  However, "when all federal claims have been dismissed before trial, the best course if to remand the state law claims to the state court from which the case was removed."  *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 359 (6th Cir.2004); *see also Gaff v. Federal Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir.1987) ("It is generally recognized that where, as in this case, federal issues are dismissed before trial, district courts should decline to exercise pendent jurisdiction over state law claims.").

**FACTUAL ALLEGATIONS**

5.      Plaintiff was employed with AT&T for more than 21-year, during which she held various desk positions, in various departments, and regularly received favorable performance evaluations.

6.      Throughout her employment with AT&T, Plaintiff suffered degenerative disease in her spine, and required permanent accommodations, including a sit/stand work station, as her physician restricted her from sitting for more than 30 minutes at a time.

7.      Plaintiff's permanent accommodations/restrictions in connection with her degenerative disease had been documented and acknowledged by AT&T throughout most of her employment.

8.      In approximately 2010, Plaintiff was transferred to AT&T's global billing department.

9.      While working in the global billing department, Plaintiff developed persistent shoulder pain and carpal tunnel syndrome in both arms and wrists, so she purchased, and began using, a trackpad and an ergonomic key board and mouse to minimize the pain.

10.      On approximately January 16, 2012, AT&T transferred Plaintiff to its repair office in Brecksville, Ohio to work as a Maintenance Administrator, in which position Plaintiff was responsible for administering repair requests from customers, and dispatching repair technicians to customers' homes to perform repairs.

11.      Upon transferring Plaintiff to its repair office, AT&T prohibited her from using the ergonomic mouse and keyboard she purchased and utilized to minimize symptoms from her carpal tunnel syndrome and persistent shoulder pain.

12.      On approximately January 18, 2012, Plaintiff met with her Area Manager, Victoria Green ("Green"), and Attendance Manager, Lashon Borom ("Borom"), and told them that she suffered from carpal tunnel syndrome and persistent shoulder pain, that one of her general practiconer temporarily restricted her to limited typing, and that both her general practitioner and orthopedist recommended that she use the ergonomic keyboard and mouse she purchased to alleviate the symptoms.

13.      Around that same time, at the request of Borom and Green, and in accordance

3

with AT&T's policy, Plaintiff reported her condition, as well as her requested accommodations, to AT&T's Integrated Disability Service Center ("IDSC").

14.     On or about January 31, 2012, Plaintiff provided Green and Borom with the original letter from her physician setting forth her work restrictions.

15.     Despite receiving the physician work restrictions, Borom, who was/is not a licensed medical professional, challenged the validity of the accommodations Plaintiff requested (i.e., her touchpad, ergonomic keyboard, and ergonomic mouse).

16.     On approximately March 26, 2012—after two months of fighting for her reasonable accommodation, Plaintiff received an email from Laura Page, an employee in AT&T's IDSC, approving the accommodations she requested.

17.     Nonetheless, the managers of Plaintiff's department (the repair office) refused to honor the accommodations, even though they had been approved by IDSC.

18.     As a result, Plaintiff was forced to continue working without the accommodations she needed, which severely exacerbated the pain she was experiencing in her extremities and caused her disability to worsen.

19.     AT&T also prohibited Plaintiff from taking time off to undergo therapy during training, though it permitted at least two (2) of her similarly situated Caucasian co-workers to take time off during their training.

20.     On approximately April 13, 2012, the pain in her extremities had become so unbearable that Plaintiff had to leave work to go to the hospital.

21.     On approximately April 24, 2012, Plaintiff's orthopedist restricted her from returning to work because AT&T's failure to provide her with the necessary accommodations

was causing her symptoms to become more severe.

22.     Although it was initially believed that Plaintiff would not require surgery for her carpal tunnel syndrome and persistent shoulder pain, because Plaintiff's disability became more severe as a result of being forced to work without the accommodations she needed, Plaintiff's orthopedist scheduled her to undergo a series of surgeries.

23.     From approximately June 2012 to March 2013, Plaintiff underwent a series of five (5) surgeries to help correct her carpal tunnel syndrome and persistent shoulder pain.

24.     After her surgeries, Plaintiff applied for workers' compensation benefits, and underwent physical therapy in order to regain full movement in her arms and hands.

25.     After recovering from her surgeries, Plaintiff's orthopedist released her to return to work on April 15, 2013, on the conditions that she be permitted to use a trackpad and ergonomic keyboard, and was scheduled to work only half days for the first 30 days following her release.

26.     Nonetheless, on approximately April 9, 2013—less than a week before Plaintiff was permitted to return to work—AT&T unilaterally placed Plaintiff on a 6-month disability leave of absence ("DLOA").

27.     Notably, Plaintiff—who did not need to take a leave of absence as her orthopedist had just released her to return to work—never agreed to be placed on a DLOA, and there were more beneficial leave options available to her, including sickness and accident disability leave, which would have allowed her to continue receiving pension and 401K contributions.

28.     Moreover, had AT&T honored the reasonable accommodations the she and her

5

doctor requested, which the IDSC already approved, Plaintiff would have been able to perform all functions of her job.

29.     Upon learning that she had been placed on the DLOA, on approximately April 14, 2013, Plaintiff called Brooke Cisneros, AT&T's H.R. Employee Relations Manager, and told Cisneros that she had been released to return to work on April 15, 2013.

30.     In response, Cisneros told Plaintiff that if she comes in to work, she (Cisneros) would require her to submit to a Fitness for Duty ("FFD") Exam.

31.     Plaintiff, who did not object to a FFD Exam, returned to work the next day, but shortly after she arrived, her Area Manager, Green, walked her out of the office and told her to not come back until she was no longer disabled.

32.     Plaintiff subsequently called Cisneros, who told Plaintiff that she could not return to work/and had to be placed on a DLOA unless she could provide something that says "I'm no longer disabled and I can work full duty…"

33.     Thereafter, Plaintiff called the AT&T Complaint Hotline, and reported that she thought she was being discriminated against based on her disability.

34.     Upon information and belief, although AT&T refused to accommodate Plaintiff's disability, it did offer accommodations to Plaintiff's Caucasian co-workers who suffered disabilities.

35.     For example, one of Plaintiff's Caucasian co-workers, who was blind, was permitted to work a limited schedule, and use special equipment and a guide dog to accommodate his disability.

36.     Nonetheless, AT&T failed to offer reasonable accommodations to Plaintiff or her

African American co-workers with disabilities, including a female African American co-worker who was also blind, but who was not permitted to bring a guide dog to work.

37.     Moreover, when Plaintiff's significantly younger male co-workers suffered work-related injuries or disabilities, AT&T routinely placed them on its sickness and accident disability plan (instead of a DLOA), which allowed them to continue to receive pension and 401K contributions during their absences.

38.     AT&T refused to place Plaintiff on the sickness and accident disability plan, but instead placed Plaintiff on a DLOA, and as a result, Plaintiff received no contributions to her pension or 401K, during her forced leave of absence.

39.     Upon information and belief, AT&T placed older employees on DLOAs at a disproportionately higher rate than younger employees because employees who had been employed with AT&T since prior to 1995 (like Plaintiff) were otherwise entitled to receive a greater amount in pension contributions.

40.     Moreover, because Plaintiff had applied for worker's compensation benefits, AT&T should have otherwise coded her leave of absence as worker's compensation leave, not a DLOA, which would have allowed her to continue accruing service credits (upon which her pension contributions were based) during her time off.

41.     Accordingly, shortly after AT&T forced Plaintiff to take a leave of absence, Plaintiff called Borom, told her that if AT&T would not allow her to return to work, then she would be using worker's compensation, and provided her with the workers' compensation claim number.

42.     Nonetheless, AT&T refused to code her leave of absence as workers'

compensation leave, and because it placed her on a DLOA, Plaintiff no longer received the health insurance coverage she previous received through AT&T, and no longer had coverage for the nerve ablation procedures she needed to alleviate the pain from her disabilities.

43.     On approximately August 19, 2013—2-months prior to the conclusion of the forced leave of absence—Plaintiff noticed that she was listed as "terminated" on AT&T's Employee Benefit's website.

44.     On approximately August 20, 2013, Plaintiff contacted Becky Delgadillo ("Delgadillo"), an employee in AT&T's EEO Operations, and asked Delgadillo:  (a) why she was listed as terminated on the Employee Benefit's website; and (b) why AT&T would not honor her IDSC-approved accommodations so that she could return to work.

45.     In response, Delgadillo assured Plaintiff, *inter alia*, that she had not been terminated, and said she would look into the accommodations issue.

46.     Delgadillo also misrepresented to Plaintiff that Brooke Cisneros—who Plaintiff reported in her complaints to the AT&T Complaint Hotline—was not an HR Employee Relations Manager at AT&T.

47.     After her call with Delgadillo, Plaintiff confirmed that Cisneros was, in fact, an AT&T HR Employee Relations Manager.

48.     On September 19, 2013, Plaintiff engaged in the protected activity of filing a charge against AT&T with the Equal Employment Opportunity Commission ("EEOC"), alleging, race discrimination, disability discrimination, and failure to accommodate in connection with, *inter alia*, her forced leave of absence.

49.     On approximately September 20, 2013, Plaintiff received a letter from AT&T IDSC

employee, Cheryl Dawson ("Dawson"), informing Plaintiff that her leave of absence was scheduled to end on October 13, 2013, and that she had to obtain a release to return to work without restrictions or else she would be terminated.

50.     On approximately September 25, 2013, Plaintiff called Dawson requesting to return to work with the IDSC-approved accommodations she previously requested, to which Dawson responded that AT&T's disability leave policy requires employees to return to work full-duty with no restrictions.

51.     In other words, AT&T's policy, as described by Dawson, prevents individuals with disabilities from returning to work.

52.     On approximately September 26, 2013, Plaintiff again called the AT&T Hotline and again reported that she was being discriminated against based on her disability.

53.     Around that same time, Plaintiff sent a letter to AT&T President, Randall Stephenson, in which she reported the discriminatory treatment to which she was being subjected by AT&T.

54.     On approximately October 1, 2013, Plaintiff, who had been released to return to work since April 2013, notified Janice King, Director EEO Operations at AT&T, that her doctor had released her to return to work full-time on the condition that she be permitted to use her ergonomic equipment.

55.     On October 8, 2013, Plaintiff returned to work, but shortly after she arrived, her Direct Report Manager at the time, JuneAnn Harloff ("Harloff") escorted her out of the office.

56.     Thereafter, on October 9, 2013, Plaintiff emailed Janice King, and managers Green and Borom, to find out when she would be permitted to return to work.

57.     In response, Janice King told Plaintiff that she could return to work on October 11, 2013.

58.     After returning to work on October 11, 2013, Plaintiff's managers, including Green, Borom, and Harloff, subjected her to an on-going hostile work-environment, including by, *inter alia*, staring at Plaintiff while she worked, yelling at her for making complaints to AT&T's Complaint Hotline, constantly subjecting her to nitpicking harassment, requiring her to work unfavorable shifts (i.e., shifts that employees with less-seniority than Plaintiff did not want to work), and prohibiting her from using the IDSC-approved ergonomic equipment she purchased to accommodate her carpal tunnel syndrome and persistent shoulder pain.

59.     Moreover, upon returning to work, Plaintiff discovered that, instead of coding Plaintiff's forced leave of absence as workers' compensation leave, Borom falsely represented, in Plaintiff's attendance records, that Plaintiff requested a DLOA, which resulted in Plaintiff receiving no service credits during her leave of absence.

60.     On approximately October 13, 2013, Plaintiff sent an email to Rick Plant, Senior Labor Relations Manager at AT&T, in which she reported that she was being subjected to a hostile work environment, and that Borom had falsified her attendance records.

61.     On October 29, 2013, Plaintiff filed a second EEOC charge against AT&T, this time for disability discrimination and retaliation.

62.     Nonetheless, Plaintiff's managers continued to subject Plaintiff to a hostile work environment.

63.     On November 7, 2013, as a result of AT&T's harassment campaign and failure to accommodate her disabilities, Plaintiff suffered an anxiety attack at work.

64.    On approximately November 13, 2013, Plaintiff reported to the AT&T Complaint Hotline and AT&T Corporate Securities, that after she filed her charge of discrimination with the EEOC, certain personnel records (including workers' compensation documentation and attendance records), had been altered or destroyed.

65.    Shortly thereafter, AT&T further altered Plaintiff's attendance records, but instead of correctly coding Plaintiff's leave of absence as workers' compensation, AT&T simply changed Plaintiff's return date from the forced DLOA to October 11, 2013 (the date Plaintiff returned to work).

66.    As a result, Plaintiff did not accrue any service/seniority credits during her 6-month leave of absence.

67.    Moreover, while AT&T ultimately did permit Plaintiff to use ergonomic equipment, it did not allow her to use the ergonomic equipment she purchased.  Instead, AT&T required Plaintiff to use work-issued ergonomic equipment, which AT&T had to order.

68.    Thereafter, Plaintiff had to continue working without the accommodations she needed, as she did not receive a work-issued ergonomic keyboard until approximately December 2013, and did not receive a trackpad until approximately *September 2014—nearly a year later.*

69.    On approximately December 12, 2013, Plaintiff had to leave work, and later went to the emergency room, due to the pain caused by her disabilities, which was exacerbated as a result of AT&T's repeated refusal to accommodate her disabilities, and AT&T's failure to provide Plaintiff with the health benefits she needed (and previously had) for the nerve ablation procedures.

11

70.     On approximately January 22, 2014, Plaintiff received a letter from AT&T stating that that she was listed as a "regular & unrestricted" employee.

71.     On approximately February 1, 2014, Plaintiff emailed Janet King, to confirm that that she was still listed as an employee with permanent accommodations/restriction.

72.     Notably, Plaintiff's accommodations/restrictions in connection with the degenerative disease in her spine had been documented and acknowledged by AT&T for nearly her entire employment.

73.     Nonetheless, on or about March 19, 2014, AT&T informed Plaintiff that she again would need job accommodation forms for permanent accommodations/restrictions (including her sit/stand work station) that were supposed to have already been documented.

74.     On March 20, 2014, Plaintiff filed another EEOC charge against AT&T for disability discrimination, race discrimination, age discrimination, and retaliation.

75.     On or about April 10, 2014, Plaintiff attended an EEOC mediation, at which Becky Delgadillo was present on behalf of AT&T.

76.     Following the mediation, AT&T began to retaliate against Plaintiff even more including by, *inter alia*, requiring Plaintiff to pay for medical benefits for which other full-time employees did not have to pay, closing out Plaintiff's complaints to the AT&T Complaint Hotline without conducting any investigation, failing to provide Plaintiff with the track pad it said it would provide, and falsely telling Plaintiff that there was no work for her.

77.     Between April 14, 2014 to July 20, 2014, Plaintiff filed 5 separate charges with the EEOC as a result of AT&T's on-going discriminatory, harassing, and retaliatory treatment.

78.     Also, on approximately June 1, 2014, Plaintiff reported to AT&T management

12

that she was still being harassed and retaliated against as a result of her EEOC charges.

79.     On June 2, 2014—then very next day—Green falsely told Plaintiff that AT&T no longer had any work for her.

80.     On approximately June 9, 2014, JuneAnn Harloff falsely told Plaintiff that AT&T did not have work for her.

81.     There was certainly work available for Plaintiff, in fact, her job (Maintenance Administrator) was available, and Plaintiff had been performing, and was/is capable of performing, the essential functions of that job.

82.     Moreover, while Plaintiff's job was still available, even if it were not, then AT&T otherwise failed to offer Plaintiff its transitional work program, and otherwise violated its own policy which states:  "If the employee's job is still available upon their return to work, then the employee should be returned to the same position.  However, if the job is no longer available, a *job search will be done* and this may involve a geographical location change."

83.     In approximately September 2014, nearly a year after Plaintiff returned from her first forced leave of absence, AT&T, which required Plaintiff to use a work-issued track pad instead of her own, finally provided Plaintiff with the work-issued track pad.

84.     In other words, although Plaintiff's doctor required that she use a track pad to accommodate her disabilities, and although AT&T finally agreed to provide her with one, it did not do so until nearly a year later.

85.     What is more is that Plaintiff had her own track pad that should could have been using, but AT&T prohibited her from doing so.

86.     On December 17, 2014, AT&T again unilaterally placed Plaintiff on a DLOA, which

13

led her to file another charge with the EEOC.

87.     Nonetheless, AT&T's discriminatory, harassing, and retaliatory treatment towards Plaintiff persisted, and AT&T continued to falsely represent that there was no work available for Plaintiff.

88.     On several occasions between 2014 and 2016, Plaintiff's managers told her to her to leave after she arrived to work for her *scheduled* shift.

89.     On October 29, 2015, Plaintiff filed yet another charge with the EEOC for disability discrimination, race discrimination, age discrimination, and retaliation.

90.     On January 26, 2016, Plaintiff engaged in the protected activity of filing a lawsuit against AT&T, Green, and Borom (N.D. Ohio Case No. 1:16-cv-00186), asserting claims for discrimination, retaliation, and hostile work environment harassment.[1]

91.     On February 18, 2016, AT&T terminated Plaintiff's employment.

## COUNT I
### Disability Discrimination (Ohio R.C. § 4112)

92.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

93.     Plaintiff is a member of a protected class under Ohio R.C. § 4112, because she suffers disabilities.

94.     Plaintiff is and was qualified for the positions she held during her employment with AT&T.

95.     Plaintiff could and can safely and substantially perform the essential functions of

_____

[1]Note: Case No. 1:16-cv-00186 was later dismissed *without* prejudice, and Plaintiff timely refiled this action.

the positions despite her disabilities.

96.     AT&T subjected Plaintiff to adverse employment actions and disparate treatment because she suffers disabilities, has a record of physical impairment, and/or was perceived, by AT&T, as being disabled, including but not limited to:  treating her worse than her similarly-situated co-workers who did not suffer a disability; placing her on mandatory DLOAs even though she had been released to return to work; prohibiting her from using the ergonomic equipment she purchased to accommodate her disabilities, falsifying her personnel records; denying her paid time off she had earned; withholding her earned pension and 401K contributions; depriving her of service/seniority credits; denying/depriving her the health insurance coverage she previously had; later requiring Plaintiff to pay for medical benefits for which other full-time employees did not have to pay; failing to investigate Plaintiff's complaints to the AT&T Complaint Hotline; repeatedly harassing and humiliating her as a result of her condition; falsely representing to Plaintiff that there was no work for her; repeatedly forcing her to go home during her scheduled shifts; and terminating her employment.

97.     AT&T's discriminatory actions and inactions, some of which are described hereinabove, deprived Plaintiff of equal employment opportunities in violation of Ohio R.C. § 4112.

98.     AT&T's discriminatory conduct was malicious, and reflects an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to suffer substantial damages, thereby rendering AT&T liable for punitive damages.

99.     As a result of AT&T's disability-based discriminatory actions and inactions, some of which are described hereinabove, Plaintiff has suffered substantial damages, including but

not limited to lost wages and benefits, and mental anguish, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT II
### Disability-Based Hostile Work Environment Harassment (Ohio R.C. § 4112)

100.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

101.    Plaintiff was subjected to ongoing, unwanted and unwelcomed, harassment by AT&T, including her managers at AT&T, as a result of her disability.

102.    The harassing conduct towards Plaintiff included, *inter alia*:  repeatedly lying to Plaintiff; forcing Plaintiff to take leave of absences even though she had been released to return to work; telling Plaintiff to not return to work until she was no longer disabled; listing Plaintiff as terminated during her DLOA; twice escorting Plaintiff out of the office after she returned to work from leave of absences; yelling at Plaintiff for submitting complaints to the AT&T Complaint Hotline; repeatedly denying Plaintiff the reasonable accommodations she needed, even after they had been approved by IDSC; prohibiting Plaintiff from using the ergonomic equipment she purchased, and instead requiring her to use work-issued ergonomic equipment, and then failing to provide Plaintiff with all the work-issued ergonomic equipment she needed for nearly a year after she returned to work from her first forced leave of absence; requiring Plaintiff to work unfavorable shifts, even though she had more seniority than her similarly-situated co-workers who were permitted to work more favorable shifts; listing Plaintiff as a "regular and unrestricted" employee, and then requiring her to submit new job accommodation forms for permanent accommodations/restrictions that had already been documented; repeatedly telling Plaintiff to go home on days she was scheduled to work; and

repeatedly embarrassing and humiliating Plaintiff in front of her co-workers.

103.     The harassing conduct was severe and pervasive, unreasonably interfered with Plaintiff's work performance, and created an intimidating, offensive, and hostile work environment.

104.     AT&T knew that Plaintiff's managers were harassing her, and that the harassing conduct created a hostile work environment for Plaintiff, but failed to take prompt and effective remedial action, and failed to provide Plaintiff with a work environment free of harassment.

105.     AT&T's conduct was malicious, and reflects an outrageous conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to suffer substantial damages, thereby rendering AT&T liable for punitive damages.

106.     As a result of the harassment to which Plaintiff was subjected by AT&T and her managers at AT&T, some of which is described hereinabove, Plaintiff suffered damages, including lost wages and mental anguish, in an amount in excess of Twenty-Five Thousand Dollars ($25,000).

**COUNT III**
**Failure to Accommodate (Ohio R.C. § 4112)**

107.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

108.     Plaintiff had and has disabilities that substantially limits her ability to perform major life activities.

109.     Plaintiff was and is able to perform the essential functions of the positions she held at AT&T with or without reasonable accommodation despite her disabilities.

17

110.    AT&T knew that Plaintiff suffered disabilities.

111.    Plaintiff requested that AT&T provide her with the reasonable accommodations, including but not limited to:  a track pad, and an ergonomic keyboard and mouse.

112.    Plaintiff's physician documented the necessity of the reasonable accommodations Plaintiff requested, and IDSC approved the requested accommodations.

113.    Nonetheless, AT&T repeatedly refused to provide Plaintiff with the necessary and reasonable accommodations she requested, and refused to otherwise allow Plaintiff to use her own ergonomic equipment.

114.    AT&T failed to engage in the interactive process with Plaintiff with respect to her requested accommodation and with respect to how her disabilities could have been reasonably accommodated, in violation of Ohio R.C. § 4112.

115.    AT&T's conduct was malicious, and reflects an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to suffer substantial damages, thereby rendering AT&T liable for punitive damages.

116.    As a direct and proximate result of AT&T's actions and inactions, some of which are described hereinabove, Plaintiff has suffered substantial damages, including but not limited to lost wages and benefits, mental anguish, adverse health effects, diminished earning capacity, and loss of opportunity of gainful employment, in an amount in excess of Twenty-Five Thousand Dollars ($25,000).

## COUNT IV
### Race Discrimination (Ohio R.C. § 4112)

117.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

18

118.    Plaintiff is a member of a protected class under Ohio R.C. 4112.02 based on her race (African American).

119.    Plaintiff was, and is, equally and/or more qualified than her similarly situated Caucasian co-workers.

120.    AT&T subjected Plaintiff to disparate treatment, and  took adverse employment actions against her, at least in part, because of her race, including by, *inter alia*, treating her worse than her similarly situated non-African American co-workers with respect to the terms and conditions of employment; denying her reasonable accommodations, but providing accommodations to her similarly situated non-African American co-workers who suffered disabilities; prohibiting her from taking time off for therapy, but allowing her similarly-situated Caucasian co-worker's to take time off; repeatedly placing her on DLOA without her knowledge or consent, falsifying her personnel records, denying her paid time off that she had earned; denying her/depriving her of service credits and  benefits, including 401K and pension contributions; denying her/depriving her of health insurance coverage; later requiring her to pay for health benefits for which her similarly-situated Caucasian co-workers did not have to pay; forcing her to go home on days she was scheduled to work; and terminating her employment.

121.    AT&T's race-based discriminatory actions and inactions, some of which are described hereinabove, deprived Plaintiff of equal employment opportunities in violation of Ohio R.C. § 4112.

122.    AT&T's conduct was malicious, and reflects an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff

to suffer substantial damages, thereby rendering AT&T liable for punitive damages.

123.    As a result of AT&T's race-based discriminatory actions and inactions, some of which are described hereinabove, Plaintiff has suffered damages, including but not limited to lost wages and mental anguish, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

**COUNT V**
**Age Discrimination (Ohio R.C. § 4112)**

124.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

125.    Plaintiff is a member of a protected class under Ohio R.C. § 4112 based on her age (51).

126.    Plaintiff was, and is, equally and/or more qualified than her similarly situated significantly younger co-workers.

127.    AT&T subjected Plaintiff to disparate treatment, and took adverse employment actions against her, at least in part, because of her age, including by, *inter alia*, treating her worse than her similarly situated substantially younger co-workers with respect to the terms and conditions of employment; denying her reasonable accommodations, but providing accommodations to her similarly situated significantly-younger co-workers who suffered disabilities; prohibiting her from taking time off for therapy, but allowing her similarly-situated significantly younger co-worker's to take time off; repeatedly placing her on DLOA without her knowledge or consent, falsifying her personnel records, denying her paid time off that she had earned; denying her/depriving her of service credits and  benefits, including 401K and pension contributions; denying her/depriving her of health insurance coverage; later requiring her to

pay for health benefits for which her similarly-situated significantly younger co-workers did not have to pay; forcing her to go home on days she was scheduled to work, and terminating her employment.

128.    Upon information and belief, AT&T's leave of absence policies and procedures have a disparate impact on older employees.

129.    AT&T's age-based discriminatory actions and inactions, some of which are described hereinabove, deprived Plaintiff of equal employment opportunities in violation of Ohio R.C. § 4112.

130.    AT&T's discriminatory conduct was malicious, and reflects an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to suffer substantial damages, thereby rendering AT&T liable for punitive damages.

131.    As a result of AT&T's age-based discriminatory actions and inactions, some of which are described hereinabove, Plaintiff has suffered substantial damages, including but not limited to lost wages and benefits, and mental anguish, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT VI
### Retaliation (Ohio R.C. § 4112)

132.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

133.    Plaintiff engaged in the protected activity of reporting and opposing, the ongoing discrimination and harassment to which she was being subjected by AT&T.

134.     Plaintiff also engaged in the protected activity of filing various charges against AT&T as a result of the disability, race, and age-based discrimination, harassment, and retaliation to which she was being subjected by AT&T.

135.     AT&T was aware that Plaintiff had engaged in the protected activities described hereinabove.

136.     After, and as a result of Plaintiff having engaged in the protected activities described hereinabove, AT&T took adverse employment actions against Plaintiff, including, *inter alia*:  placing her on forced DLOAs; denying her, and later depriving her of, the reasonable accommodations she requested; falsifying her personnel records; denying her paid time off she had earned; denying her benefits, including 401K and pension contributions during her forced leave of absences; depriving her of service credits; depriving her of the health insurance coverage she previously had, and later requiring Plaintiff to pay for health benefits for which other full-time employees were not required to pay; falsely representing that there was no work for Plaintiff, and repeatedly requiring Plaintiff to go home on days she was scheduled to work; and terminating her employment.

137.     Plaintiff also engaged in the protected activity of filing a lawsuit against AT&T as a result of the discrimination, harassment, and retaliation to which she was being subjected by AT&T.

138.     AT&T was aware that Plaintiff engaged in the protected activity of filing a lawsuit against it.

139.    Just three (3) weeks after, and as a result of, Plaintiff having engaged in the protected activity of filing a lawsuit against it, AT&T took adverse employment actions against Plaintiff, including terminating her employment.

140.    AT&T's retaliatory conduct, some of which is described hereinabove, was engaged in recklessly, maliciously and intentionally, and violated Plaintiffs rights under Ohio R.C. § 4112.

141.    AT&T's conduct reflects was malicious, and reflects an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to suffer substantial damages, thereby rendering AT&T liable for punitive damages.

142.    As a result of the AT&T's retaliatory actions and inactions, some of which are described hereinabove, Plaintiff suffered substantial damages, including but not limited to lost wages and mental anguish, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## DAMAGES

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

A.    Order AT&T to make Plaintiff whole by providing compensation in the form of economic, emotional, and punitive damages, in an amount in excess of Twenty-Five Thousand Dollars ($25,000).

B.    Award Plaintiff appropriate back pay, front pay, and reimbursement for lost wages and benefits in an amount to be proven at trial;

C.    Grant Plaintiff her attorney's fees, costs, and disbursements;

D.    Award Plaintiff pre- and post-judgement interest at the statutory rate; and

E.      Grant such further and additional relief as this Court deems just and proper.

Respectfully submitted,

*Matthew S. Grimsley*
Matthew S. Grimsley (0092942)
*mgrimsley@groedel-law.com*
Caryn M. Groedel (0060131)
*cgroedel@groedel-law.com*
CARYN GROEDEL & ASSOCIATES CO., LPA
31340 Solon Road, Suite 27
Cleveland, OH 44139
Telephone: (440) 544-1122
Facsimile:   (440) 996-0064
Attorneys for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*Matthew S. Grimsley*
Matthew S. Grimsley (0092942)
One of Plaintiff's Attorneys

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Amended Complaint was filed electronically on this 20th day of April, 2020.  Notice of this filing will be sent by the Court's electronic filing system.  Parties may access this filing through the Court's system.

*Matthew S. Grimsley*
Matthew S. Grimsley (0092942)
One of Plaintiff's Attorneys

24